Erik S. Syverson (SBN 221933)
  erik@syversonlaw.com
Steven T. Gebelin (SBN 261507)
  steven@syversonlaw.com
Scott M. Lesowitz (SBN 261759)
  scott@syversonlaw.com
**SYVERSON, LESOWITZ & GEBELIN LLP**
8383 Wilshire Boulevard, Suite 520
Beverly Hills, California 90211
Telephone: (310) 341-3072
Facsimile: (310) 341-3070

*Attorneys for* Plaintiff Dr. Jonathan C. Ellis

Ashley I. Kissinger (SBN 193693)
  kissingera@ballardspahr.com
**BALLARD SPAHR LLP**
1225 17th Street, Suite 2300
Denver, CO  80202
Telephone: (303) 376-2407
Facsimile: (303) 296-3956

Scott S. Humphreys (SBN 298021)
  humphreyss@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 800
Los Angeles, CA  90067
Telephone: (424) 204-4400
Facsimile: (424) 204-4350

*Attorneys for* Defendant DUN & BRADSTREET, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. JONATHAN C. ELLIS, an individual<br><br>Plaintiff,<br><br>vs.<br><br>DUN AND BRADSTREET, INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:18-cv-10077-MRW<br><br>[Assigned to the *Honorable Michael R. Wilner*]<br><br>**JOINT REPORT OF RULE 26 MEETING**<br><br>Case Management Conference<br>Date:          February 13, 2019<br>Time:          11:00 am<br>Courtroom:   550<br>Roybal Federal Building and Courthouse<br>5th Floor<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

1  Plaintiff Dr. Jonathan C. Ellis ("Plaintiff" or "Ellis") and Defendant Dun &
2  Bradstreet, Inc. ("Defendant" or "D&B") by and through their undersigned counsel
3  of record, respectfully submit this Joint Rule 26(f) Report following counsels'
4  telephonic planning meeting on January 25, 2019.

5  **1. <u>Nature and Basis of Claims and Defenses</u>**

6  *Plaintiff's statement*:

7  Plaintiff, a distinguished and experienced Beverly Hills gastroenterologist,
8  has sued Defendant for its publication of an egregious and completely false report
9  made through Defendant's credit reporting service to multiple persons in and
10  considering business relationships with Dr. Ellis.  Specifically, Defendant's false
11  publication claimed (without basis) that Dr. Ellis had been arrested and charged with
12  multiple crimes based in pedophilia and arranging for sex with a minor.  Defendant
13  specifically noted that such arrest was a "Special Event" having a substantial
14  negative impact on the creditworthiness of the medical corporation through which
15  Dr. Ellis conducts his respected and well-regarded gastroenterology practice and for
16  which Dr. Ellis serves as CEO.

17  There was absolutely no factual basis to support Defendant's linking of any
18  arrests to Dr. Ellis or the medical company in which his practice resides, and the
19  general and special damages to his reputation and business prospects from the
20  outrageous and toxic defamation are immense.  As a result, Plaintiff seeks to recover
21  general, special, and punitive damages for Defendant's baseless conduct.

22
23
24
25
26
27
28

***Defendant's statement*:**

Dun & Bradstreet, Inc., founded in 1841, is the global leader in commercial data and analytics. The company's database contains more than three hundred million global business records.

Plaintiff Jonathan Ellis, a physician, is the CEO of the Doheny Endosurgical Center, and he is identified as such in Defendant's credit report on that business (the "Doheny Report").  In April 2018, Defendant added to the end of the Doheny Report this notation:  "04/17/2018 – Criminal Proceedings:  According to a published report dated Apr. 12, 2018, Jonathon Ellis was arrested and charged with four felony counts of distributing or showing pornography to a minor and one misdemeanor count of arranging a meeting with a minor for lewd purposes."  That notation is factually accurate; however, it concerns a different Los Angeles-based physician named Jonathon Ellis.

Plaintiff's Complaint is barred, as a matter of law, by the mercantile agency privilege because Defendant published the Doheny report without malice.  Because Plaintiff's claims are based entirely on Dun & Bradstreet's exercise of its constitutionally protected right of free speech, the Complaint is additionally subject to a special motion to strike under California's so-called Anti-SLAPP Statute, Cal. Civ. Proc. Code § 425.16.  There can be no dispute that the Doheny Report was published in a place open to the public in connection with an issue of public interest, and that Defendant acted without malice in referencing in it the published report that criminal proceedings had been initiated against another Dr. Jonathon Ellis. Defendant's report is therefore protected, as a matter of law, by the mercantile agency privilege and is subject to immediate dismissal, with prejudice, pursuant to the anti-SLAPP statute, which also entitles Defendant to recover its attorneys' fees and costs incurred in connection with litigating its anti-SLAPP motion.

**2. Jurisdiction, Venue, and Service Issues**

   **a.    Subject Matter Jurisdiction:** The parties agree that this Court has jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. §1332, as the parties are citizens of different states and the allegations place the amount in controversy in excess of $75,000, exclusive of interest and costs.

   **b.    Personal Jurisdiction and Venue:** The parties agree that venue in this district is appropriate on Plaintiff's claims pursuant to U.S.C. § 1391(b), as the alleged harms occurred in this District, and all parties are subject to Court's personal jurisdiction in this matter.

   **c.    Service of Parties:** Plaintiff served Defendant with the Complaint on December 6, 2018.  Defendant answered the Complaint on January 17, 2019.

**3. Prior, Pending, and/or Anticipated Motions**

   **a.    Prior and Pending Motions:**  Defendant previously sought and received an order of the Court granting a 21-day extension of time to answer the Complaint.  (Dkt. No. 13.)  The Court also entered a stipulated order directing the Clerk of Court to strike and remove from the public record an exhibit that Plaintiff had submitted to the Court in connection with Defendant's Motion for Extension of Time.  (Dkt. No. 15.)

   **b.    Anticipated Motions:**

   ***Plaintiff's statement***: Although there are no current plans for any specific motions, Plaintiff may file a motion for summary judgment as appropriate to narrow any of the claims or defenses in dispute, or discovery motions to compel if absolutely necessary.

   ***Defendant's statement***:

   **i.    Anti-SLAPP Motion and Motion for Attorney's Fees**

   Defendant intends to file a special motion to strike Plaintiff's complaint under the California Anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, at the earliest possible time, and by no later than April 1, 2019  If Defendant prevails on the

1   motion it will file a motion for attorney's fees and costs under the anti-SLAPP

2   statute.

3                    **ii.    Discovery Motions**

4          As set forth in more detail at Section 5.d below, to avoid unnecessary motion

5   practice, Defendant respectfully requests that the Court exercise early supervisory

6   control over a phased discovery process in this case.  Plaintiff has already served

7   facially improper discovery requests, and has threatened to abuse the subpoena

8   power to notice depositions of nonparties whose testimony has no conceivable

9   relevance to any issue in this case.  Defendant accordingly anticipates significant

10  discovery disputes in this case, including a motion for a protective order if a

11  resolution cannot be reached informally between the parties by stipulation filed with

12  the Court.

13         There are two issues of particular concern, both arising from Plaintiff's

14  counsel's pursuit of a separate case against Dun & Bradstreet.  Plaintiff's counsel

15  has been using this defamation lawsuit as a platform to troll on LinkedIn (and

16  perhaps elsewhere) for potential clients interested in bringing a meritless, separate

17  class action against Dun & Bradstreet alleging that it engages in false advertising

18  practices.

19         First, Plaintiff's counsel is abusing the tools of discovery in *this* case to look

20  for documents and information that could be used to support *that* unrelated and

21  meritless future action.  For example, Plaintiff's counsel is making public claims on

22  LinkedIn that Dun & Bradstreet's statements about its use of "cloud" technology are

23  false.  In this defamation action, Plaintiff's Request for Admission Nos. 65 and 66

24  ask Defendant to "Admit that you do not have a data cloud" and "Admit that you

25  refer to your database as a cloud."  Document Request No. 49 (of 100) asks for "All

26  documents related to objections to any claim or marketing of yours asserting that

27  you have a 'data cloud.'"  These requests and many others have absolutely nothing

28  to do with the defamation claims at issue – they are nothing more than an improper

1   fishing expedition into Dun & Bradstreet's protected trade secrets, proprietary
2   information, and business practices.

3        Second, Plaintiff's counsel is harassing and threatening to depose nonparties –
4   *whose testimony is wholly irrelevant in this case* – in a transparent effort to extract a
5   high settlement.  In the past week, Plaintiff's counsel has repeatedly threatened to
6   serve deposition subpoenas on high level executives at three entities currently
7   involved in a private equity purchase transaction of Dun & Bradstreet.  Plaintiff's
8   counsel is well aware that these individuals do not have any testimony that could
9   conceivably bear upon any issue in this case.  These third parties have already
10  objected to what they viewed as Plaintiff's counsel's "inappropriate" telephone
11  calls, and have asked the undersigned to advise Plaintiff's counsel that his calls were
12  inappropriate and that any further communications by him should be directed to the
13  undersigned.  Plaintiff's counsel refused to abide by this request.  Last Saturday,
14  February 2, he sent an email to counsel for the investor group, (a) advising of his
15  intent to serve, this week, a deposition subpoena on a high level executive in the
16  investor group; (b) advising of Plaintiff's current settlement demand in the instant
17  case; and (c) threatening to increase that settlement demand by specific increments
18  if this case is not settled immediately.

19       These ongoing abuses of the subpoena power and other discovery tools in this
20  case appear to be designed to harass non-parties and to impose significant
21  unnecessary expense on Defendant in the hope of leveraging a quick and high
22  settlement of this case before Defendant can bring its anti-SLAPP motion.
23  Defendant accordingly requests that the Court exercise its authority to limit
24  discovery as set forth in Section 5 below, and assist the parties in resolving these
25  issues without the need for contentious motion practice.

26

27

28

### iii.   Summary Judgment Motion

While Defendant maintains that the entire Complaint should be dismissed with prejudice under the anti-SLAPP statute, in the event that Plaintiff's case survives the anti-SLAPP motion, Defendant anticipates filing a motion for summary judgment at the conclusion of discovery.

### 4.   Expected Amendments, Changes to Pleadings, or Additional Parties

*Plaintiff's statement*:  Plaintiff has no plans at this time to amend or change the pleadings, as Defendant has confirmed that it is the appropriate corporate party for this action.  As set forth in the schedule below, Plaintiff proposes a Monday, April 15, 2019 deadline (60 days after the scheduling conference) to file motions to amend pleadings and/or name additional parties.

*Defendant's statement*:  Defendant does not foresee a need to amend its Answer but reserves the right to do so should discovery indicate that it has additional defenses to Plaintiff's claims.  As set forth in Section 5.d below, Defendant plans to file an anti-SLAPP motion and requests that discovery initially be limited to the issues raised by the anti-SLAPP motion.  If the Court adopts Defendant's suggested plan for efficient management of this case, the deadline for amending the pleadings and adding parties will be set after resolution of Defendant's anti-SLAPP motion (if then necessary), as additional discovery will be needed to determine whether additional parties should be added to the case.

### 5.   Discovery Subjects and Plan

**a.**   **Initial Disclosures:**  The parties propose making initial disclosures within two weeks of the scheduling conference, *i.e.* on or before February 9, 2019. The parties have agreed that Defendant will make its disclosures under FRCP 26(a)(1)(A)(iv) (insurance agreement(s)) only after the Court has entered a protective order in this action.

**b.**   **Discovery Taken to Date:**

***Plaintiff's statement***:  Plaintiff served Defendant with a first set of written discovery on January 26, 2019.

***Defendant's statement***:  Defendant requested, during the parties' Rule 26(f) conference held on Friday, January 25, 2019, that Plaintiff refrain from commencing discovery until this Court's February 13 conference so that the parties could discuss with the Court how discovery should proceed given Defendant's impending anti-SLAPP motion.  Plaintiff refused and served discovery electronically the next day, Saturday, January 26.  *See also* Section 3.b.ii *supra*.

**c.      Subjects of Discovery:**

***Plaintiff's statement***: Plaintiff does not believe there is any need to phase or otherwise place *ex ante* limits on discovery during the conduct of the case.  Plaintiff expects to conduct discovery on the claims and defenses at issues, including topics such as:

  i.   The facts surrounding Defendant's publication of the report at issue, including facts such as:

   1.   the source(s) of Defendant's statement that Dr. Ellis was arrested;

   2.   the persons involved in the publication of the report;

   3.   the matching or verification steps taken by or for Defendant relating to the report;

   4.   the persons to whom Defendant published the report;

   5.   Plaintiff's damages, including the impact of the publication on Plaintiff's reputation and business relationships; and

   6.   the persons whom Defendant is aware have viewed the report.

  ii.   Defendant's policies and procedures regarding the accuracy and/or verification of information it publishes in its reports, including:

   1.   information relating to known error rates;

   2.   fact checking costs and benefits;

3. marketing of its reports, including to the subject businesses;

4. marketing of its reports for credit evaluation by businesses in or considering economic relationships;

5. the variance of such policies between different types and sizes of subjects of its reports;

   iii. Defendant's defenses and denials of the claims at issue

   iv. Defendant's financial condition, ability to pay punitive damages, and other factors relating to punitive damages;

*Defendant's statement*: Defendant does not anticipate needing discovery to litigate its anti-SLAPP motion. As set forth in Section 5.d below, Defendant requests that any discovery taken by Plaintiff initially be limited by the Court to the issues raised by the anti-SLAPP motion. If this case survives the anti-SLAPP motion, Defendant expects to conduct discovery, including taking the depositions of Plaintiff and others, on:

   i. The issue of whether Plaintiff is a public figure;

   ii. Plaintiff's alleged pecuniary and nonpecuniary damages and any evidence demonstrating the lack thereof;

   iii. Lack of foreseeability of Plaintiff's alleged damages;

   iv. Third party liability for Plaintiff's alleged damages;

   v. Plaintiff's own liability for his alleged damages;

   vi. Other causes of Plaintiff's alleged damages;

   vii. Plaintiff's communications with third parties about the Doheny Report and about his alleged damages; and

   viii. Plaintiff's failure to mitigate his alleged damages, including his refusal to permit Defendant to assist in mitigating those alleged damages.

   **d. Proposed Discovery Plan pursuant to Fed. R. Civ. P. 26(f):**

*Plaintiff's statement*: Plaintiff proposes a six-month fact discovery period to commence following the exchange of initial disclosures on February 9, 2019,

followed by a three-month expert discovery period, as set forth in the Proposed Deadline Chart below.

***Defendant's statement*:**

Defendant's proposes that discovery should first proceed only on the issues raised by Defendant's impending anti-SLAPP motion, which Defendant intends to file at the earliest possible opportunity on or before April 1, 2019.  Such limited discovery is expressly contemplated by the anti-SLAPP statute,[1] which was enacted by the California legislature for the purpose of providing a "fast and inexpensive unmasking and dismissal" of meritless lawsuits that implicate the constitutional right of freedom of speech.  *Ludwig v. Superior Court*, 27 Cal. App. 4th 8, 16 (1995); *accord Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042 (1997) (anti-SLAPP statute is "designed to nip SLAPP litigation in the bud").  Defendant will support its motion with declarations that will establish that Defendant is entitled to judgment as a matter of law because the conduct about which Plaintiff complains is privileged under the mercantile agency privilege (a particular application of the common interest privilege), and Defendant did not act with malice as is required to overcome that privilege.

Defendant recognizes that Plaintiff may wish to submit evidence in opposition to Defendant's anti-SLAPP motion.  To effectuate the purposes of the anti-SLAPP statute, and to avoid unnecessary delay and expense in this case, Defendant respectfully requests that the Court (1) phase discovery to permit limited discovery only on the issues raised by Defendant's anti-SLAPP motion before that motion is resolved; and (2) exercise supervisory control over the discovery process throughout the case.

Specifically, Defendant requests that the Court control and supervise the litigation of Defendant's anti-SLAPP motion as follows:

---

[1] *See* Cal. Civ. Proc. Code § 425.16(g).

- Impose, at the Scheduling Conference, a stay on all discovery – other than initial disclosures required under FRCP 26(a)(1) – until the anti-SLAPP motion is fully resolved, including the exhaustion of appellate remedies.

- Defendant will file its anti-SLAPP motion on or before April 1, 2019.

- By April 8, 2019, Plaintiff shall advise Defendant whether it believes discovery is necessary for it to respond to the motion and, if so, what specific discovery is requested.  The parties will then endeavor to agree on the scope of discovery for Plaintiff to respond to the anti-SLAPP motion.  In the event the parties cannot agree, they will first contact the Court for a telephonic conference pursuant to the Court's *Civil Procedures* in an effort to avoid discovery motions practice.

- Assuming the parties have agreed to the scope of anti-SLAPP discovery by April 15, 2019, the parties will then have until July 26, 2019 to complete anti-SLAPP-related discovery.   [If the parties cannot agree on the appropriate scope of anti-SLAPP discovery, and motions practice ensues, the parties will have 3.5 months to complete discovery after the Court's final order resolving the discovery dispute.]  Either party may file a motion to extend the time for discovery if necessary.

- Plaintiff's opposition to the anti-SLAPP motion is due August 5, 2019, and Defendant's reply is due August 26, 2019.  [In the event of anti-SLAPP discovery motions practice, Plaintiff's opposition is due 10 days after the close of anti-SLAPP discovery, and Defendant's reply is due 21 days thereafter, unless ordered otherwise.]

- The hearing on the anti-SLAPP motion will be held on September 16, 2019.  [In the event of anti-SLAPP discovery motions practice, the hearing will be set for a later date.]

- Should the case continue beyond the Court's resolution of the anti-SLAPP motion, the Court will convene a Scheduling Conference at the expiration of the deadline for the parties to exhaust their appellate remedies.[2]  Defendant anticipates that any discovery then remaining will be limited to discovery on damages and third party liability.

**e.  Proposed Limitations or Modifications of the Discovery Rules- Limitations, ESI, Special Procedures, or other Orders:**

Plaintiff does not request any changes to the limitations on discovery imposed under the Federal or Local Rules at this time but reserves all rights to seek changes at a later date.

Defendant believes this subject is appropriate to discuss at the conference in light of the discovery that has already been served in this case by Plaintiff.

The parties do not anticipate issues regarding the disclosure or discovery of ESI at this time and are working together on a proposed protocol for preservation and possible future production of ESI.

The parties will seek to use a stipulated protective order addressing confidential information and documents obtained during discovery and intend to use such order to address any potential issues regarding privilege or work product protection and special procedures to handle these issues after production.

The parties agree that it would be appropriate in this particular case for the Court to enter an order directing that, before moving for an order relating to discovery, the movant **must** request a conference with the Court pursuant to this Court's *Civil Procedures*.

**6.  Related cases or proceedings:**  None.

**7.  Proposed Deadlines:**

---

[2]  If an anti-SLAPP motion is denied, the defendant has a right of interlocutory appeal. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 832 (9th Cir. 2018).

| Event | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| Last Day to File Motion to Amend Pleadings or Add Parties | Mon. April 15, 2019 | TBD at future CMC (*See* Section 5.d *supra*.) |
| Deadline for Defendant to file its anti-SLAPP motion | | April 1, 2019 |
| Fact Discovery Completed | Fri. August 9, 2019 | July 26, 2019, on issues raised in Defendant's anti-SLAPP motion only. This date may be extended if there is anti-SLAPP discovery motions practice. |
| Deadline for Plaintiff to file its Opposition to the anti-SLAPP motion | | August 5, 2019.  This date may be extended as set forth above if there is anti-SLAPP discovery motions practice. |
| Deadline for Defendant to file its Reply in support of the anti-SLAPP motion | | August 26, 2019.  This date may be extended as set forth above if there is anti-SLAPP discovery motions practice. |
| Hearing on anti-SLAPP motion | | September 16, 2019. |

| | | |
|---|---|---|
| | | This date may be extended as set forth above if there is anti-SLAPP discovery motions practice. |
| Expert Disclosure (if any) Produced | Mon. Sept. 9, 2019 | TBD at future CMC (*See* Section 5.d *supra*.) |
| Rebuttal Disclosure (if any) Produced | Wed. Oct. 9, 2019 | TBD at future CMC (*See* Section 5.d *supra*.) |
| Expert Discovery Concluded | Fri., Nov. 8, 2019 | TBD at future CMC (*See* Section 5.d *supra*.) |
| Last Day for Summary Judgment Motions to Be Filed | Wed. Dec. 4, 2019 | TBD at future CMC (*See* Section 5.d *supra*.) |
| Last Day for Summary Judgment Motions to Be Heard | Wed. Jan. 8, 2020 | TBD at future CMC (*See* Section 5.d *supra*.) |
| ADR Completed | Fri. Jan. 17, 2020 | TBD at future CMC (*See* Section __ *supra*. The parties agree that the ADR completion deadline should be after resolution of the anti-SLAPP motion.) |

| Filing of PTC Order, Jury Instructions, and Other Trial Documents | Wed. Feb. 5, 2020 | TBD at future CMC (*See* Section 5.d *supra*.) |
|---|---|---|
| Pretrial Conference and Hearing on Pretrial Motions | Wed. Feb. 12, 2020 | TBD at future CMC (*See* Section 5.d *supra*.) |
| Trial | Mon., March 2, 2020 | TBD at future CMC (*See* Section 5.d *supra*.) |

## 8.   <u>Trial Procedure and Estimate:</u>

Plaintiff has requested a jury trial.  The parties preliminarily estimate that a trial before a jury will last five to seven days.

Defendant anticipates that, depending on whether third parties are later added to the case, it may be appropriate for the Court to order a separate trial of the claim against it pursuant to Federal Rule of Civil Procedure 42(b).  In that event, its trial estimate might change.

Defendant also anticipates that, should this case go to trial, it will request that evidence on the mercantile agency privilege proceed at the outset of the trial because it is a manageable issue that might, on the evidence, be the basis for judgment as a matter of law under Rule 50(a).

## 9.   <u>Settlement:</u>

The parties have engaged in settlement discussions, but despite the parties' efforts those conversations have not resulted in a settlement.

Plaintiff would prefer to conduct alternative dispute resolution in this case with a referral to a Magistrate within the Central District, consistent with ADR Procedure No. 1.  Defendant prefers ADR Procedure No. 1.  In the event that neither

option is available, the parties respectfully request that the Court direct this case to private mediation (ADR Procedure No. 3).

**10.  Manual for Complex Litigation:**

The parties do not believe that case is appropriate for use of the procedures for Complex Litigation.

**11.  Trial Counsel:**

Plaintiff's Trial Counsel:

Syverson, Lesowitz & Gebelin LLP

Steven T. Gebelin  Registered as ECF User
Email of Record:   steven@syversonlaw.com
Scott M. Lesowitz  Registered as ECF User
Email of Record:   scott@syversonlaw.com
8383 Wilshire Blvd, Suite 520
Beverly Hills, CA 90211

Defendant's Trial Counsel:

BALLARD SPAHR LLP

Ashley I. Kissinger, Registered as ECF User
Email of record:   kissingera@ballardspahr.com
1225 17th Street, Suite 2300
Denver, CO  80202

Scott S. Humphreys, Registered as ECF User
Email of record:   humphreyss@ballardspahr.com
2029 Century Park East, Suite 800
Los Angeles, CA  90067

**12.  Other Issues.**

***Defendant's Statement:***

In addition to the misuse of the discovery process described in Section 3.b.ii above, Defendant wishes to bring to this Court's attention, with the hope they can be amicably resolved at the CMC on February 13, 2019, matters of serious concern

relating to Plaintiff's counsel's misuse of social media in connection with this case. Specifically:

(1)    One of Plaintiff's counsel has been continuing to use LinkedIn as a tool to harass and intimidate Defendant and its employees.  He has repeatedly "tagged" the company, and individual employees, by name in posts he makes on his own LinkedIn page, an act which sends a notification to them concerning the post.  The posts reference a news article about this case and contain misleading statements about the Defendant's business practices, and they appear to be designed to "taunt" Defendant and its employees and to solicit public responses about ongoing litigation from represented parties.  Defendant's counsel advised Plaintiff's counsel that this appears to be a violation of California Rule of Professional Conduct 4.2 (prohibition against communications with represented persons).  After several communications back and forth, it appears that Plaintiff's counsel has "untagged" Dun & Bradstreet and its employees from all but one post at the time of this writing, in which Dun & Bradstreet remains "tagged."  While Dun & Bradstreet hopes that Plaintiff's counsel will resolve this remaining issue, given Plaintiff's counsel's penchant for harassing both represented parties and non-parties alike, Dun & Bradstreet wishes to raise this issue with the Court to prevent any future motion practice with respect to these issues.

(2)    That same Plaintiff's counsel publicly posted to his LinkedIn page a confidential email communication that the undersigned sent to him in connection with this litigation.  He did so even though (a) the email had the word "**Confidential**" in bold at the top; and (b) the undersigned expressly advised Plaintiff's counsel that she strongly objected to Plaintiff's counsel posting the email on LinkedIn in direct response to his specific inquiry as to whether she so objected.

This behavior falls short of the professionalism and civility expected of California attorneys as set forth in various rules and guidelines.  It is also prejudicing Defendant in this case, as it is being put to significant burden and

1  expense in responding to these behaviors – including addressing as many as four

2  emails in a day containing separate threats and demands – on a near daily basis

3  instead of attending to the important task of preparing its dispositive anti-SLAPP

4  motion.  Indeed, this is the same kind of behavior that required Defendant to file an

5  ex parte application for a three-week extension of time to respond to the Complaint

6  in this action; an ex parte application that the Court granted over Plaintiff's

7  objection that the extension request was intended "to cause as much delay as

8  possible," which the court found was "unsupported, unconvincing, and profoundly

9  discourteous."  (Dkt. No. 13.)  It is also the same type of behavior that required

10  Defendant to negotiate a stipulation to strike from the public record patently

11  improper material that Plaintiff filed in support of its opposition to the ex parte

12  application.  (*See* Dkt. Nos. 14-15.)

13      Defendant sincerely hopes that, with the Court's assistance, the parties can

14  resolve these issues at the February 13, 2019 conference, as well as the discovery

15  issues discussed above, amicably and without motion practice.  To enhance the

16  prospects for achieving this goal, Defendant respectfully requests that the Court

17  enter an order, pursuant to Fed. R. Civ. P. 16(c)(1), ordering that *all* counsel of

18  record appear in person at the February 13, 2019 conference or, at a minimum, that

19  both parties have at least one attorney present who is authorized to make stipulations

20  and binding representations about all of the matters discussed above.

21      ***Plaintiff's Response:***

22      As an initial matter, Plaintiff opposes Defendant's attempt to seek

23  inappropriate relief through its portions of this joint statement of the discovery plan,

24  rather than through appropriate motions.  Plaintiff vigorously disagrees with

25  Defendant's characterization of the litigation and discovery efforts of Plaintiff's

26  counsel in this case, including its informal discovery gathering.

27      First, the discovery served to date is completely appropriate to the issues in

28  this case and in fact is largely directed to the very issues that Defendant claims it

---

*Ellis v. Dun and Bradstreet, Inc., et al.*                    17                    **JOINT F.R.C.P. 26(f) REPORT**
USDC, Case No. 2:18-cv-10077-MRW

will use as the basis for an anti-SLAPP motion - the applicability of a qualified privilege to Defendant's defamatory statements.  Indeed, Defendant and its counsel of record indicated on November 21, 2018 that Defendant was "prepared to immediately file an anti-SLAPP motion pursuant to California Code of Civil Procedure § 425.16" if this case were filed.  Rather than "immediately" do so, Defendant avoided Plaintiff's efforts to hold a Rule 26(f) conference, such that Defendant finally agreed to hold it six weeks after Plaintiff's first request to schedule it.  Defendant now seeks to indefinitely avoid the appropriate discovery sought by Plaintiff.  Plaintiff's current plans to to seek discovery from third parties that are actively investigating and performing due diligence on Defendant as part of a buyout (after Defendant has publicly disclosed this lawsuit as an issue in its securities filings) are not improper, and are in part the result of Defendant's ongoing resistance to participate in legitimate discovery procedures.

Second, Plaintiff's counsel's use of LinkedIn both as an informal investigatory method for researching claims regarding Defendant and for making posts related to the conduct of this case has not been improper.  Indeed, that have been no communications between Plaintiff's counsel and any employee or officer of Defendant.  Instead, and despite Plaintiff's counsel's disagreement that "tags" linking to Defendant's LinkedIn profile are communications with a represented party (rather than the online equivalent of publishing a statement to the general public including Defendant's full corporate name), Plaintiff's counsel removed all such linking "tags" from his LinkedIn posts.  While Defendant professes to have acted within the scope of its own free speech rights in this case, Defendant's counsel now seeks to restrict the free speech rights of Plaintiff and his counsel without any legal basis, in a manner that would be to the detriment of the efficient litigation of this case.

Finally, Defendant's claims of "harassment" are baseless, especially to the extent they are based on Plaintiff's counsel publicizing an email from Defendant's

1  counsel that had **<u>no settlement</u>** offer from Defendant and no confidential

2  information within it at all (or even a veiled reference to confidential information),

3  and instead threatened to sue Plaintiff's counsel.  Counsel receiving up to four

4  emails in one day regarding a given case is not harassment.  Nor was Plaintiff's

5  opposition to the request for an extension of time to respond to the Complaint

6  harassment; neither was Plaintiff's prompt agreement stipulate to strike a portion of

7  the filing in that opposition to which Defendant subsequently objected.

8          Regardless of the impropriety of the request made by Defendant, Plaintiff's

9  counsel will comply with local rules requiring lead trial counsel to appear at the

10 scheduling conference.

11

12 DATED: February 6, 2019                  Respectfully submitted,

13                                          **SYVERSON, LESOWITZ & GEBELIN LLP**

14 Pursuant to L.R. 5-4.3.4, the filer

15 attests that all other signatories       By:   ___/s/ *Steven T. Gebelin*___

16 listed, and on whose behalf the                Erik S. Syverson
                                                  Steven T. Gebelin
17 filing is submitted, concur in the              Scott M. Lesowitz

18 filing's content and have                Attorneys for Plaintiff Dr. Jonathan C. Ellis

19 authorized the filing

20

21 DATED: February 6, 2019                  **BALLARD SPAHR LLP**

22

23                                          By:   _____**/s/**_____

24                                                Ashley I. Kissinger
                                                  Scott S. Humphreys
25

26                                          Attorneys for Defendant Dun & Bradstreet, Inc.

27

28